## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KIA TANG, derivatively on behalf of COUPANG, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BOM SUK KIM, GAURAV ANAND, NEIL MEHTA, BENJAMIN SUN, MICHAEL PARKER, MATTHEW CHRISTENSEN, LYDIA JETT, HARRY YOU, and KEVIN WARSH,<br><br>Defendants,<br><br>and<br><br>COUPANG, INC.,<br><br>Nominal Defendant. | Case No.:<br><br><br>**DEMAND FOR JURY TRIAL** |

## VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT

Plaintiff Kia Tang ("Plaintiff"), by Plaintiff's undersigned attorneys, derivatively and on behalf of Nominal Defendant Coupang, Inc. ("Coupang" or the "Company"), files this Verified Shareholder Derivative Complaint against Defendants Bom Suk Kim ("Kim"), Gaurav Anand ("Anand"), Neil Mehta ("Mehta"), Benjamin Sun ("Sun"), Michael Parker ("Parker"), Matthew Christensen ("Christensen"), Lydia Jett ("Jett"), Harry You ("You"), and Kevin Warsh ("Warsh") (collectively, the "Individual Defendants" and with Coupang, "Defendants") for breaches of their fiduciary duties as directors and/or officers of Coupang, unjust enrichment, gross mismanagement, violation of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and for contribution and indemnification under Section 10(b) and 21D of the Exchange Act and under Section 11(f) of the Securities Act of 1933 (the "Securities Act").

As for Plaintiff's complaint against the Individual Defendants, Plaintiff alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Coupang, legal filings, news reports, securities analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## <u>NATURE OF THE ACTION</u>

1.      This is a shareholder derivative action to remedy misconduct committed by Coupang's current and/or former directors and officers from March 11, 2021 to March 15, 2022 (the "Relevant Period") based on misleading statements and omissions made in connection with Coupang's March 2021 initial public offering ("IPO"), failures to correct the misleading statements and omissions, and additional misleading statements made subsequent to the IPO.

2.      Coupang is one of the largest e-commerce companies in Asia. Headquartered in Seattle, Washington, Coupang operates an online marketplace that offers a wide range of products, including home goods, electronics, fresh groceries, and its own private label ("PB") branded items. Not only does Coupang sell its own inventory of goods which it sources from a network of "suppliers," it also allows third-party "merchants" to sell their own goods on its platform. Coupang's relationship with these merchants allows it to provide a much wider selection of products to customers than would otherwise be possible, adding to its appeal and convenience.

3.     To break the traditional tradeoff between wide selection and quick delivery, Coupang built a vertically integrated distribution network of approximately 100 logistics centers across South Korea and its very own fleet of dedicated delivery drivers. By the start of the Relevant Period, approximately 70% of South Korea's 51 million residents lived within 7 miles of a Coupang logistics facility, enabling Coupang to offer speedy delivery options on millions of items through its "Rocket Delivery" service, including next-day and same-day delivery. Due to its large footprint and quick delivery, Coupang became known as the "Amazon of South Korea." Much of Coupang's ability to retain and attract customers is based on the speed and convenience of ordering from Coupang, made possible by its large supply chain infrastructure.

4.     Through its unique business model of wide selection, speed, and convenience, Coupang experienced consistent revenue growth, securing its place as the largest player in the South Korean e-commerce market. The Company's revenue continued to skyrocket in 2020 as the COVID-19 pandemic increased customers' preference for the conveniences of online shopping and home delivery. Coupang's total revenue tripled from $4 billion to almost $12 billion in the three-year span from 2018 to 2020.

5.     To capitalize on its explosive growth, Coupang decided to commence an IPO in the United States in early 2021. On February 12, 2021, Coupang filed with the SEC an initial draft of the registration statement filed on Form S-1, which, after two amendments, was declared effective on March 10, 2021(as amended, the "IPO Registration Statement"). On March 11, 2021, Coupang filed with the SEC a final prospectus on Form 424B4, which formed part of the IPO Registration Statement (the "Prospectus"). Pursuant to these IPO materials, Coupang sold to the investing public 100 million shares of Coupang Class A common stock at $35 per share, for total gross proceeds of $3.5 billion. Coupang's IPO was the largest by a foreign company on Wall

Street since China's Alibaba Group Holding Limited's debut in 2014.

6.      Soon after market open on March 24, 2021, news broke that a Coupang employee in his early 40s died his second day on the job. As the *Korea Herald* reported the next morning, "[t]he courier's death immediately triggered speculation that he may have become the latest delivery worker to die from apparent overwork." After the close of trading on March 24, 2021, media sources published an official statement from Coupang revealing that the deceased courier was allowed to begin delivering packages even though he displayed "heart-related abnormalities" during his initial medical examination.

7.      On this news, Coupang's stock dropped from $46.00 on March 23, 2021, to close at $43.70 on March 25, 2021, representing a decline of 5%.

8.      On April 4, 2021, the owner of a small business who sold goods on Coupang's remodeled marketplace for third-party merchants, (the "Item Market"), appeared on MBC Radio Show's investigative program "Straight" and revealed how Coupang was using the trade material of this small business owner  to advertise and secure sales for other merchants in Coupang's Item Market.

9.      On this news, Coupang's stock price declined from $47.31 to close at $45.94 on April 5, 2021, or approximately 2.9%.

10.      After market close on May 3, 2021, a number of civic groups announced that they reported Coupang to the Korea Fair Trade Commission ("KFTC") for requiring small business owners to hand over their protected trade materials in its Seller Terms and Conditions.

11.      On this news, Coupang's stock price declined from $42.06 to close at $41.49 on May 4, 2021, representing a drop of 1.3%.

12.      On May 10, 2021, civic groups representing the interests of small business owners

in South Korea met at the non-governmental organization, People's Solidarity for Participatory Democracy ("PSPD"). They issued a release refuting various points made by Coupang about its Sellers Terms and Conditions, including, in particular, that photographs created for advertising purposes can be protected by law under South Korea's Copyright Act, contrary to Coupang's assertions.

13.     On this news, Coupang's stock price dropped from $38.93 to close at $37.07 on May 10, 2021, representing a decline of almost 4.8%.

14.     On June 17, 2021, a fire broke out at one of Coupang's largest fulfillment centers, the Deokpyeong Facility. This was after Coupang's February 2021 investigation revealed 277 defects with the Deokpyeong Facility's fire safety system. Coupang's Logistics Center chapter of Korea's Public Transportation Union held a press conference on June 20, 2021, where workers stated how the facilities were always dusty, electrical devices were running all day, and the sprinklers were turned off due to frequent malfunctions.

15.     Beginning on June 22, 2021, and continuing for several days thereafter, news reports revealed that Coupang was facing a growing consumer boycott, with users deleting their Coupang accounts and encouraging others to do so, in response to details about the fire safety failings at the Deokpyeong Facility. The boycott reached its peak on June 25, 2021.

16.     On this news, Coupang's stock price declined $2.62, or 6.55%, from the close of trading on June 22, 2021, to the close of trading on June 25, 2021.

17.     On July 4, 2021, news broke that the KFTC was investigating Coupang for manipulating its search algorithm to favor its high-margin PB products.

18.     On this news, Coupang's stock price dropped $0.51 per share, or 1.3%, to close at $39.95 per share on July 6, 2021, the next trading day. On July 14, 2021, Deutsche Bank

downgraded Coupang from "buy" to "hold." Among other things, Deutsche Bank pointed out that "Coupang is being probed over allegations it manipulated search algorithms to prioritize its own products over those of suppliers."

19.     Meanwhile, the damage caused to Coupang and its business by the June 2021 fire at the Deokpyeong Facility was still being revealed. In its second quarter 2021 earnings release, published after the market closed on August 11, 2021, Coupang reported a $518.6 million loss for the quarter, which it attributed primarily to almost $300 million in inventory and equipment losses due to the fire at the Deokpyeong Facility.

20.     On this news, Coupang's stock price dropped $3.07 per share, or 8.3%, to close at $34.13 per share on August 12, 2021. Securities analysts specifically attributed the Company's quarterly loss due to the fire at the Deokpyeong Facility. For example, Deutsche Bank Research reported on August 12, 2021, that the "296m of the drop was due to its warehouse fire, which impacted inventory and fixed assets." Samsung Securities also noted that Coupang's "operated losses widened y-y [year-over-year] due to a one-off cost (related to a logistics center fire in June)."

21.     After the close of the market on August 18, 2021, the KFTC announced that it fined Coupang nearly $3 million and issued the Company a corrective order for forcing hundreds of its suppliers to raise the price of products at competing businesses or purchase products and services from Coupang against their will to make up for margin losses caused by Coupang's price match system.

22.     On this news, Coupang's stock price dropped $1.24 per share, or 2.0%, to close at $31.73 per share on August 19, 2021.

23.     Before the market opened on September 10, 2021, a KFTC representative

announced that it had received numerous complaints that Coupang manipulated its search algorithm to improperly prioritize its own products over those of third-party sellers.

24.     On this news, Coupang's stock price dropped $0.27 per share, or 0.9%, to close at $29.98 per share on September 10, 2021.

25.     On November 12, 2021, soon after market open, Coupang held its earnings call for the quarter ended September 30, 2021, during which Defendant Kim disclosed that higher costs were attributable to "inefficiency" and hiring troubles caused by the June 2021 fire at the Deokpyeong Facility.

26.     On this news, Coupang's stock price dropped $2.61 per share, or 8.9%, to close at $26.58 per share on November 12, 2021. Analysts covering Coupang took note of this in their corresponding reports. For example, UBS noted that the supply shortage during the quarter was due to the "loss of one of [Coupang's] largest fulfilment centre to a fire in June." Similarly, BofA Global research advised that Coupang's supply issues were "exacerbated by the loss of one of largest fulfillment centers to a fire in June."

27.     On March 6, 2022, the KFTC announced that it issued a corrective order to Coupang for failing to maintain written dispute resolution policies accessible to customers on its platform in violation of South Korea's Electronic Commerce Act.

28.     On this news, Coupang's stock price declined $1.38, or 6.5%, to close at $19.72 at the close of trading on March 7, 2022. On March 9, 2022, UBS published a note in which it observed that "Coupang shares have fallen 58% since its IPO in March 2021." Among other things, it attributed that drop to "regulatory risks" arising from "online platform regulations."

29.     After market close on March 14, 2022, PSPD announced that it reported Coupang to the KFTC for manipulating product reviews for its PB products to ensure they receive more

exposure in its search results and published findings supporting its claim.

30.    On this news, Coupang's stock price declined $0.67 to close at $15.45 on March 15, 2022, representing a decline of 4.1%.

31.    During the Relevant Period, the Individual Defendants breached their fiduciary duties by making and/or causing Coupang to make to the investing public, in conjunction with the Company's IPO, numerous false and misleading statements to the market concerning its working conditions and the safety of its workers; its business dealings with its suppliers and merchants; and its policies and procedures to protect customers. Specifically, the Individual Defendants willfully or reckless made and/or caused Coupang to make false and misleading statements that failed to disclose, *inter alia*, that: (1) the labor conditions for its frontline workers continued to be unsafe; (2) Coupang maintained large fulfillment centers that failed to follow basic fire safety measures; (3) Coupang used its position of power to coerce hundreds of suppliers to raise the price of their goods on competing sites or to purchase advertising from Coupang against their will to protect Coupang's profit margins on those goods when they eroded or were lost; (4) Coupang misappropriated protected trade content from its merchants to maximize the commissions it earned on third-party sales; (5) Coupang manipulated its search algorithm, favoring high-margin PB products to the detriment of suppliers and merchants with similar products; and (6) Coupang failed to reveal to merchants and customers they were under investigation by the KFTC prior to its IPO. As a result of the foregoing, the Individual Defendants' statements about the Company's business, operations, and prospects were materially false and misleading and lacked a reasonable basis at all relevant times.

32.    The Individual Defendants failed to correct and caused the Company to fail to correct these false and misleading statements and omissions of material fact, rendering them

personally liable to the Company for breaching their fiduciary duties.

33.     The Individual Defendants' misconduct has subjected the Company, its Chief Executive Officer ("CEO"), and its Chief Financial Officer ('CFO") to be named as defendants in federal securities fraud class action lawsuit pending in the United States District Court for the Southern District of New York (the "Securities Class Action") which asserts violations of Sections 11, 12(a)(2), and 15 of the Securities Act and violations of Sections 10(b) and 20(a) of the Exchange Act. The Individual Defendants' misconduct further subjected the Company to spend, and continue to spend, large sums of money for internal investigations, the implementation of adequate internal controls, and losses due to the unjust enrichment of Individual Defendants who were breaching their fiduciary duties.

34.     Therefore, the Individual Defendants' have substantially damaged Coupang by their breaches of fiduciary duty and other misconduct.

35.     The Individual Defendants are currently directors and/or officers at Coupang. In light of the Individual Defendants' breaches of fiduciary duties, and their collective engagement in fraud, as well as the substantial likelihood of the liability in this action and certain Defendants' liability in the Securities Class Action, the Individual Defendants are not disinterested and/or independent and thus, a majority of Coupang's Board of Directors (the "Board") cannot independently and disinterestedly consider a demand to commence litigation against themselves, the other Individual Defendants, and any other wrongdoers on Coupang's behalf.

## JURISDICTION AND VENUE

36.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 10(b) of the Exchange Act, 15. U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5, Section 21D of the Exchange Act, 15 U.S.C. §

78u-4(f), and Section 11(f) of the Securities Act, 15 U.S.C. § 77k(f)(1).

37.     Plaintiff's claims also raise a federal question concerning the claims in the Securities Class Action based on violations of the Securities Act and Exchange Act.

38.     This Court has supplemental jurisdiction over Plaintiff's state law claims per 28 U.S.C. § 1367(a).

39.     This derivative action is not a collusive action to confer jurisdiction on a court of the United States that it would not otherwise have.

40.     Venue is proper in this District because the alleged misstatements and wrongs complained of herein entered this District, Defendants have conducted business in this District, and Defendants' actions have had an effect in this District.

## PARTIES

### Plaintiff

41.     Plaintiff is a current shareholder of Coupang. Plaintiff has continuously held Coupang common stock at all relevant times.

### Defendants

42.     Nominal Defendant Coupang is a Delaware corporation with its principal executive offices at 720 Olive Way, Suite 600, Seattle, Washington 98101. Coupang's shares trade on the New York Stock Exchange ("NYSE") under the ticker symbol "CPNG."

43.     Defendant Kim has been the CEO and Chairman of the Board of the Company since May 2010. Kim signed the IPO Registration Statement in his own capacity and on behalf of Coupang and signed a registration statement filed by Coupang on March 18, 2021 on Form S-8 (the "S-8 Registration Statement" and with the IPO Registration Statement, the "Registration Statements")). Defendant Kim beneficially held approximately 76% of the voting power over

Coupang following the IPO due to his ownership of Class B common stock. Kim is a defendant in the Securities Class Action.

44.     Defendant Anand has been the CFO of the Company since December 2020. Prior to his role as CFO, Anand served as Coupang's Chief Operating Officer from January 2019 to December 2020, the Chief of Staff to Coupang's CEO from January 2017 to December 2018, and as CFO of Global eCommerce for Coupang from January 2017 to December 2017. Anand signed the IPO Registration Statement and signed the S-8 Registration Statement in his own capacity and on behalf of Coupang. Defendant Anand sold 160,000 shares of Coupang on August 16, 2021, for $5,332,800, and sold 350,000 shares on December 14, 2021, for $9,576,000, for total proceeds of $14,908,800, when he was in possession of negative material non-public information. The timing and size of these two sales by Anand are suspicious and unusual in that he has never made any other stock sales. The sale on August 16, 2021, was purportedly made to satisfy tax obligations incurred upon the settlement of restricted stock units ("RSUs") that vested, and the sale on December 14, 2021, was purportedly made to satisfy exercise costs and tax obligations incurred with the exercise of certain stock options held by Anand. Anand is a defendant in the Securities Class Action.

45.     Defendant Mehta is a Company director and is the Chair of the Compensation Committee and a member of the Nominating and Corporate Governance Committee. He was a director at the time of the IPO. Mehta signed the IPO Registration Statement and the S-8 Registration Statement.  Mehta is a defendant in the Securities Class Action.

46.     Defendant Sun is a Company director and is a member of the Audit and Nominating and Corporate Governance Committee. He was a director at the time of the IPO. Sun signed the IPO Registration Statement and the S-8 Registration Statement. Sun is a defendant in

the Securities Class action.

47.     Defendant Parker was Coupang's Chief Accounting Officer from October 2019 to September 2022. Since September 2022, Parker has served as Coupang's Vice President, Investor Relations. Parker signed the IPO Registration Statement and the S-8 Registration Statement. Parker is a defendant in the Securities Class Action.

48.     Defendant Christensen was a director on Coupang's Board at the time of the IPO until he resigned, effective immediately, on June 7, 2021. Christensen signed the IPO Registration Statement and the S-8 Registration Statement. Christensen is a defendant in the Securities Class Action.

49.     Defendant Jett was a director on Coupang's Board at the time of the IPO until she resigned, effective immediately, on October 26, 2021. Jett signed the IPO Registration Statement and the S-8 Registration Statement. Jett is a defendant in the Securities Class Action.

50.     Defendant You was a director on Coupang's Board at the time of the IPO. You signed the IPO Registration Statement and the S-8 Registration Statement. You is a defendant in the Securities Class Action.

51.     Defendant Warsh is a Company director and is the Chair of the Nominating and Corporate Governance Committee and a member of the Compensation Committee. He was a director at the time of the IPO. Sun signed the IPO Registration Statement and the S-8 Registration Statement. Warsh is a defendant in the Securities Class Action.

## FIDUCIARY DUTIES OF THE INDIVIDUAL DEFENDANTS

52.     By reason of their positions as officers and/or directors of Coupang, and because of their ability to control the business and corporate affairs of Coupang, the Individual Defendants owed Coupang and its shareholders fiduciary obligations of trust, loyalty, good faith, and due care, and were and are required to use their utmost ability to control and manage Coupang in a

fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of Coupang and its shareholders so as to benefit all shareholders equally.

53.     Each director and officer of the Company owes to Coupang and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the Company and in the use and preservation of its property and assets and the highest obligations of fair dealing.

54.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of Coupang, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein.

55.     To discharge their duties, the officers and directors of Coupang were required to exercise reasonable and prudent supervision over the management, policies, controls, and operations of the Company.

56.     Each Individual Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the highest fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets. The conduct of the Individual Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of Coupang, the absence of good faith on their part, or a reckless disregard for their duties to the Company and its shareholders that the Individual Defendants were aware of or should have been aware of posed a risk of serious injury to the Company.

57.     As senior executive officers and directors of a publicly-traded company whose common stock was registered with the SEC pursuant to the Exchange Act and Securities Act and

traded on the NYSE, the Individual Defendants had a duty to prevent and not to effect the dissemination of inaccurate and untruthful information with respect to the Company's financial condition, performance, growth, operations, financial statements, business, products, management, earnings, internal controls, and present and future business prospects, including the dissemination of false information regarding the Company's business, prospects, and operations, and had a duty to cause the Company to disclose in its regulatory filings with the SEC all those facts described in this Complaint that it failed to disclose, so that the market price of the Company's common stock would be based upon truthful and accurate information.

58.     To discharge their duties, the officers and directors of Coupang were required to exercise reasonable and prudent supervision over the management, policies, practices, and internal controls of the Company. By virtue of such duties, the officers and directors of Coupang were required to, among other things:

a.      ensure that the Company was operated in a diligent, honest, and prudent manner in accordance with the laws and regulations of Delaware, Washington, and the United States, and pursuant to Coupang's Code of Business Conduct & Ethics (the "Code of Ethics");

b.      conduct the affairs of the Company in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

c.      remain informed as to how Coupang conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, to make reasonable inquiry in connection therewith, and to take

steps to correct such conditions or practices;

d.     establish and maintain systematic and accurate records and reports of the business and internal affairs of Coupang and procedures for the reporting of the business and internal affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

e.     maintain and implement an adequate and functioning system of internal legal, financial, and management controls, such that Coupang's operations would comply with all applicable laws and Coupang's financial statements and regulatory filings filed with the SEC and disseminated to the public and the Company's shareholders would be accurate;

f.     exercise reasonable control and supervision over the public statements made by the Company's officers and employees and any other reports or information that the Company was required by law to disseminate;

g.     refrain from unduly benefiting themselves and other Company insiders at the expense of the Company; and

h.     examine and evaluate any reports of examinations, audits, or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, *inter alia*, each of the subjects and duties set forth above.

59.    Each of the Individual Defendants further owed to Coupang and the shareholders the duty of loyalty requiring that each favor Coupang's interest and that of its shareholders over their own while conducting the affairs of the Company and refrain from using their position, influence or knowledge of the affairs of the Company to gain personal advantage.

60.     At all times relevant hereto, the Individual Defendants were the agents of each other and of Coupang and were at all times acting within the course and scope of such agency.

61.     Because of their advisory, executive, managerial, and directorial positions with Coupang, each of the Individual Defendants had access to adverse, non-public information about the Company.

62.     The Individual Defendants, because of their positions of control and authority, were able to and did, directly or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by Coupang.

## COUPANG'S CODE OF ETHICS

63.     The Company's Code of Ethics states that "Coupang is committed to conducting business in an ethical, transparent, and professional manner, and in compliance with laws, regulations, and our policies. As representatives of Coupang, we expect all employees to be decisive and to take ownership for their actions. The decisions employees make must be honest and ethical. This commitment applies to our relationships with each other and with our customers, suppliers, and other third parties." The Code of Ethics also states its purpose is "to provide directors, officers, and employees with guiding principles and minimum standards for making honest and ethical decisions in their work. It applies to me, our directors and officers, and all employees at every level of our organization. Complying with the law and these principles and standards is not only a legal requirement; it is an ethical obligation for everyone at Coupang."

64.     The Code of Ethics further states that it applies to all officers, directors, and employees, stating in part:

> All officers and employees (including regular as well as part-time employees, fixed term, and any other types of workers hired by Coupang) at all levels of the organization worldwide and all members of the board of directors of Coupang, Inc. Any waiver of this Code for officers or directors may be made only by the board of directors or Audit Committee of Coupang, Inc. and will be disclosed to

stockholders as required by applicable laws, rules, and regulations.

65.     In a section titled, "Responsibilities for Employees & Managers," the Code of

Ethics states the following:

> With the assistance of the Compliance department, implement and monitor appropriate business processes. Conduct periodic compliance reviews to ensure ongoing effectiveness of business processes.
>
> *     *     *
>
> Disciplinary action: Employees and managers who do not fulfill their compliance responsibilities as required by this Code and Coupang's policies, or laws and regulations, will face disciplinary action up to and including termination of their employment, and in appropriate cases, possible civil legal action, or referral for criminal prosecution.

66.     In a section titled, "Compliance with Laws, Rules and Regulations," the Code of

Ethics states the following, in relevant part:

> Coupang is committed to:
> - Conducting business in an ethical, transparent, and professional manner, and in compliance with laws, regulations, and our policies.
> - Incorporating legal and regulatory requirements into our business strategy and processes.
> - Developing strong processes to anticipate risks, including new and changing legal and regulatory requirements.
> - Providing employees and managers with access to the subject matter expertise needed to manage legal and regulatory risks.
> - Monitoring regulatory compliance on an ongoing basis and periodically reviewing key processes.
> - Remaining compliant with applicable licensing, permitting and other applicable rules and regulations in the locations where we operate.

67.     In violation of the Code of Ethics, the Individual Defendants conducted little, if

any, oversight of the Company's engagement in the Individual Defendants' scheme to issue

materially false and misleading statements to the public and to facilitate and disguise the

Individual Defendants' violations of law, including breaches of fiduciary duty, unjust enrichment,

and violations of the Exchange Act and Securities Act. Also in violation of the Code of Ethics,

the Individual Defendants failed to maintain the accuracy of Company records and reports,

comply with laws and regulations, conduct business in an honest and ethical manner, and properly report violations of the Code of Ethics.

## THE INDIVIDUAL DEFENDANTS' MISCONDUCT

### Background

68.     Defendant Coupang is an e-commerce business incorporated in Delaware and headquartered in Seattle, Washington.  Coupang operates an online marketplace and an extensive logistics network that can source and deliver a vast array of products from produce to high-end electronics. As of its IPO in March 2021, Coupang offered a variety of goods, including items sourced from third-party merchants and suppliers, as well as its own PB products. Coupang purports to deliver 365 days a year, with guaranteed one day deliveries for many of the items it offers on its online marketplace

69.     Founded in Delaware on May 28, 2010, by Defendant Kim as Forward Ventures LLC, the Company started as a coupon-based e-commerce platform which operated under the trade name Coupang where users could purchase tickets for theaters or travel at discounted prices, similar to the business model of Groupon. In fact, the name Coupang is a portmanteau of the words "coupon" and "pang," the sound often used in Korean to signify hitting a jackpot. It soon expanded to include an eBay-inspired online marketplace comprised of third-party goods.

70.     Thereafter, Defendant Kim decided to transform Coupang from a Groupon-style business into a vertically integrated e-commerce platform like Amazon. At the time, other e-commerce platforms in South Korea lacked fulfillment capacity and relied on merchants to deliver items to consumers via third-party shipping services. But relying on third-party merchants and their preferred shipping companies created unique challenges for these e-commerce operators. Not only did they lack control over product storage conditions and fulfillment lead times, but the

so-called "last mile" of the delivery process—the stretch between the final distribution hub and the customer's doorstep—was notoriously expensive and unreliable. Defendant Kim sought to remedy that flaw by purchasing goods directly from suppliers for resale on Coupang's marketplace and building an end-to-end distribution network that could quickly source and deliver nearly any item a customer wanted with the click of a button. Kim bluntly told *Forbes* in 2014 that "[w]e want to be the Amazon of Korea.

71.     In 2013, Coupang started selling an owned-inventory selection of items. It also acquired the data-analytics company CalmSea and began using machine learning to cut down delivery times. Like Amazon, Coupang analyzed purchasing patterns to inform inventory decisions and position stock in its warehouses based on demand rather than product category.

72.     To further reduce delivery times, Coupang began hiring a small fleet of its very own full-time delivery drivers and, in March 2014, launched its "Rocket Delivery" service, which guaranteed next-day delivery free of charge on qualifying items. This immediately set Coupang apart from other e-commerce platforms in South Korea and has since become intimately associated with its brand. The Company's deliverymen, known as "Coupang Men," served as the ambassadors of its new business.

73.     South Korea provided a fertile venue for Coupang's new business platform. With over 60% of the country covered in mountains and the highest mobile phone penetration rate anywhere in the world, South Korea contains a series of densely populated urban areas with a tech-savvy, highly connected population base. In fact, nearly half of the country's population resides in the area surrounding Seoul, South Korea's capital city, making it the fifth largest metropolitan area in the world. And in a country that promotes speed and convenience, South Korea is home to one of the largest and fastest-growing e-commerce markets in the world.

74.     In approximately September 2015, Coupang expanded its website and app to include a "marketplace" for third-party businesses to sell their goods directly to customers. This opened Coupang's platform to small and medium-sized merchants who lacked the resources and/or infrastructure to engage in wholesale transactions and broadened Coupang's product mix.

75.     After transitioning its e-commerce platform into the brokerage of third-party items, in 2016, Coupang changed its name from Forward Ventures, LLC to Coupang, LLC.

76.     As its business grew, Coupang began to offer new services and products. In 2017, Coupang started selling its own PB products. In 2018, it introduced Dawn Delivery, which guaranteed delivery by 7 a.m. on orders placed by midnight on the previous day.

77.     In 2019, Coupang launched Rocket WOW and Coupang Eats. Similar to Amazon Prime, Rocket WOW is a subscription-based loyalty program that purportedly offers various benefits to members for a flat monthly fee, including free shipping with no minimum spend. Rocket WOW soon expanded to include Rocket Fresh, a fresh food grocery delivery service. Similar to Uber Eats, Coupang Eats is a delivery service for food prepared by independent restaurants. Both Rocket Fresh and Coupang Eats leveraged the vast logistics network that Coupang built for its Rocket Delivery service.

78.     After the COVID-19 pandemic swept across South Korea in 2020, homebound consumers flocked to online shopping in unprecedented numbers and Coupang's growth soared. During 2020, Coupang's active customers—those who placed at least one order with Coupang during the Relevant Period—increased by 18.2%, but net retail sales per active customer grew by 61.5%. Coupang's annual revenue reached almost $12 billion, representing a 90% increase from pre-pandemic levels in 2019.

79.     As Coupang's business grew, so too did its labor and logistics resources. By the

end of 2020, it employed nearly 50,000 workers in South Korea. In addition, as of December 31, 2020, Coupang operated over 100 fulfillment and logistics centers in over 30 cities across South Korea, encompassing over 25 million square feet or the equivalent of 400 football fields. Coupang boasted that this network was so extensive that 70% of South Korea's 51 million residents lived within 7 miles of a Coupang logistics facility.

80.     But building an expansive comprehensive logistics network required an astounding investment in infrastructure and human capital. Coupang claims that, since 2013, it has invested "billions" of dollars into its logistics network and the technology behind it. In addition, its labor costs have increased approximately fourteenfold since 2014.

81.     In addition, Coupang's huge investment in its logistics network, and new initiatives, have prevented it from turning a profit for many years. Coupang has not generated a profit since at least 2014, the year it introduced its Rocket Delivery service. Even though Coupang has experienced revenue growth every year since 2014, it has consistently operated at a net loss. For example, Coupang reported net losses of $1.1 billion, $699 million, and $475 million in 2018, 2019, and 2020, respectively, even though it reported total net revenue in excess of $4 billion, $6.2 billion, and $11.9 billion in each of those periods.

82.     To capitalize on its explosive growth, Coupang decided to commence an IPO in the United States. On February 12, 2021, Coupang publicly filed with the SEC a registration statement on Form S-1 (File No. 333-253030) containing a preliminary prospectus relating to the potential IPO of up to 120,000,000 shares of Class A common stock of a new entity by the name of Coupang, Inc. It filed amendments thereto on March 1, 2021, and March 9, 2021, respectively. The IPO Registration Statement became effective on March 11, 2021.

83.     On March 11, 2021, Coupang filed the final Prospectus for the IPO pursuant to

21

Rule 424(b)(4), deemed to be part of the IPO Registration Statement in accordance with Rule 430A of the Securities Act, which provided final pricing information for the IPO.

84.     Coupang conducted its IPO between March 11, 2021, and March 15, 2021. Through the IPO Registration Statement, 130,000,000 shares of Coupang Class A common stock was sold to the investing public at $35 per share, making it the largest IPO on Wall Street since Alibaba Group Holding Limited's debut in 2014. This valued Coupang at over $60 billion. Coupang's share price soared 80% to open at $63.50 on March 11, 2011.

85.     Coupang generated net proceeds of approximately $3.4 billion from its sale of its 100,000,000 shares of Class A common stock. Defendant Kim sold 1,200,000 shares of his own Class A common stock for $42 million.

86.     Throughout the Relevant Period, Coupang maintained an online newsroom page entitled "FACTS," which was singularly dedicated to denying any rumors of wrongdoing. For example, in response to an article by the *Financial Times* "Coupang's New York listing clouded by worker deaths," Coupang posted a statement to its newsroom in April 2021 insisting that "Coupang pays great attention to the health and welfare of all employees" and deflected responsibility by claiming that "cardiac and cerebrovascular disorders . . . are the 2nd and 4th leading causes of death in Korea." And after civic groups revealed that Coupang was misappropriating copyrighted images from small third-party businesses to support its system which uses a single image to represent the same product offered by numerous merchants and selects a winner from the group, (the "Item Winner system"), Coupang issued a statement to its newsroom, declaring that "Coupang's Item Winner (one product, one page system) is an improved service that allows . . . sellers [to] compete fairly" and "the claim that Coupang infringes on the copyrights of sellers' images is not true at all."

87.     Before Coupang filed a certificate of conversion with the Secretary of State of Delaware converting from Coupang, LLC into Coupang, Inc., (the "Corporate Conversion") Coupang, LLC had issued equity interests to various parties, including employees and early investors, in the form of common units and preferred units. In connection with the Corporate Conversion, all common and preferred units automatically converted into Class A common stock, except for those owned by Defendant Kim. All of Defendant Kim's common units and preferred units instead converted into Class B common stock. The rights of the holders of Class A common stock and Class B common stock are identical, except with respect to voting and conversion. Each share of Class A common stock is entitled to one vote per share, whereas each share of Class B common stock is entitled to twenty-nine votes per share and is convertible into one share of Class A common stock at any time at the option of the holder or automatically upon transfer except in limited circumstances.

88.     As of the close of the IPO, there were a total of approximately 1,555,059,600 shares of Class A common stock outstanding and 174,802,990 shares of Class B common stock outstanding. And as the sole owner of all Class B common shares, Defendant Kim, possessed over 76% of the combined voting power over the Company. As such, Coupang warned that this "will limit or preclude your ability to influence corporate matters for the foreseeable future."

89.     Notably, however, only the 130,000,000 shares of Class A common stock sold in the IPO were freely tradeable without restriction following the close of the IPO. All other shares of Class A common stock not sold in the IPO and all shares of Class B common stock owned by Defendant Kim were "restricted securities" within the meaning of Rule 144 of the Securities Act, meaning they cannot be sold publicly unless they are registered under the Securities Act or qualify for an exemption from registration under Rule 144 or Rule 701 of the Securities Act.

90.     In addition, the IPO Registration Statement specifically represented that "all" of the restricted shares not sold in the IPO were subject to one or more lock up agreements which prohibited their sale until August 13, 2021 (the "Lock-Up Period"), unless the conditions for an early release from the Lock-Up Period were satisfied. There were a series of at least six early releases from the Lock-Up Period beginning six trading days after the date of the Prospectus.

91.     After the close of trading on March 15, 2021, Coupang announced that the conditions for the first early release from the Lock-Up Period were satisfied. By satisfying the conditions for the first early release, the Lock-Up Period ended with respect to all outstanding shares of the Company acquired by certain employees pursuant to the exercise of options awarded under Coupang's pre-IPO employee incentive plan, and held as of February 26, 2021, making those shares of Class A common stock (as converted) eligible for sale in the market on March 18, 2021, the next trading day, subject to compliance with Rule 144 of the Securities Act.

92.     Before the market opened on March 18, 2021, Coupang filed the S-8 Registration Statement containing a reoffer prospectus relating to 29,700,836 shares of Class A common stock that were subject to the first early release from the Lock-Up Period on behalf of 2,103 individuals, which became effective immediately upon filing. The registration of these shares permitted their resale on the secondary market without violating Rule 144 of the Securities Act. The S-8 Registration Statement was signed by Coupang and the Individual Defendants.

93.     Coupang was obligated to publicly announce whether any of the early releases from the Lock-Up Period were satisfied as promptly as practicable before the release became effective. It made no such announcements other than the one on March 15, 2021.

## SUBSTANTIVE ALLEGATIONS

*The IPO Registration Statement*

94.      On March 11, 2021, Coupang filed the Prospectus deemed to be part of its IPO Registration Statement, and shares of its Class A common stock began trading on the NYSE. The IPO Registration Statement was negligently prepared and, as a result, contained untrue statements of material fact, omitted material facts necessary to make the statements contained therein not misleading, and otherwise failed to make necessary disclosures required under the rules and regulations governing its preparation.

95.      The IPO Registration Statement described Coupang's relationship with its workers as positive, stating in part:

> Founded in 2010, we are a home-grown technology company that has now become one of the three largest private sector employers in the nation. We are a significant driver of new economic opportunities for the people of Korea. As of December 31, 2020, we directly employed over 50,000 employees globally. **We consider our employee relations to be positive.**

(Emphasis added).

96.      The IPO Registration Statement contained a letter to investors from Defendant Kim. The letter to investors discussed the Company's vison for its customers and employees, stating in part:

> We believe it is both our opportunity and responsibility to challenge expectations about important social issues in our community. In a market where the industry standard is a six-day workweek, we were the first to establish a five-day workweek for our drivers, even as we became the first major service to provide deliveries to customers seven days a week. We also hire our drivers, Coupang Friends, directly, and provide them with paid time off and full benefits . . . . We hope such examples demonstrate that innovation can unlock both **a better world for our customers and a better workplace for our employees**.

(Emphasis added).

97.     Further, Defendant Kim's letter to shareholders also addressed the supplier and merchants using Coupang's platform, stating in part:

> **We also support hundreds of thousands of suppliers and merchants who earn their living on Coupang** . . . . Even during an unprecedented pandemic, as small businesses in the country suffered net losses, small businesses on Coupang saw their sales increase by over 50% through direct access to our services and customers nationwide.

(Emphasis added).

98.     The IPO Registration Statement represented that Coupang "offered" its business partners advertising opportunities: "In addition to our e-commerce services, we also have a new offering in the online advertising space. **We offer opportunities to advertise on our websites and mobile applications**, including through banner advertisements, joint promotions, and other programs." (Emphasis added).

99.     The IPO Registration Statement also stated that "**[t]he Company receives consideration from suppliers for various programs, including rebates, incentives, and discounts, as well as advertising services provided on its website and mobile applications**." (Emphasis added).

100.    In the IPO Registration Statement, Coupang represented that it offered customers the "lowest prices" available in South Korea:

> In addition to superior experience, we believe **we also offer customers the lowest prices for our owned inventory selection.**
>
> * * *
>
> **Our strategy is to provide the lowest prices available in the Korean market across a wide and diverse assortment of items.**

(Emphasis added).

101.    The IPO Registration Statement also explained that Coupang was able to secure favorable pricing for customers due to its supplier relationships, stating in part:

> **We have established an extensive network of suppliers** and merchants, **which enables us to** obtain a wide selection of merchandise while **maintaining low prices for customers**. We offer millions of SKUs under our owned-inventory selection, which requires significant procurement expertise from local and international suppliers. **We also source a large proportion of merchandise directly from manufacturers, which can result in better pricing for our customers**.

(Emphasis added).

102.    The IPO Registration Statement also explained the benefits of Coupang's structure for customers, stating in part:

> Our structural advantages from complete end-to-end integration, investments in technology, and scale economies generate higher efficiencies that allow us to pass savings to customers in the form of lower prices. We also source a large portion of merchandise directly from manufacturers, which can contribute to better pricing for our customers.
>
> * * *
>
> **In addition, cost efficiencies that we drive across our operations and economies generated from scale enable us to pass these savings on to our customers in the form of lower prices**.

(Emphasis added).

103.    The IPO Registration Statement went on to explain the reasons behind the net retail sales increase in 2019 and 2020, stating in part:

> Net retail sales for the year ended December 31, 2020 increased $5,258.0 million, or 90.9% (93.2% on a constant currency basis), as compared to the year ended December 31, 2019. **The increase was primarily due to a 18.2% growth in our Active Customers in 2020, as well as 61.5% growth (63.5% on a constant currency basis) in our net retail sales per Active Customer during that same period, driven by a continual increase in product selection and additional offerings provided to our customers.**
>
> * * *
>
> Net retail sales for the year ended December 31, 2019 increased $1,988.0 million, or 52.3% (61.4% on a constant currency basis), as compared to the year ended December 31, 2018. **The increase was primarily due to a 34.3% growth in our Active Customers in 2019, as well as 13.4% growth (20.1% on a constant currency basis) in our net retail sales per**

> **Active Customer during that same period, driven by a general increase in product selection, in-stock availability, and offerings provided to our customers.**

(Emphasis added).

104.   The IPO Registration Statement continued to explain its increase in net revenue, stating in part:

> While we are focused on increasing our owned-inventory selection in these categories, we also expect to increase the number of merchants offering items in these categories in our marketplace. . . . **Our success in increasing selection, including expansion into new categories, has contributed to the increase in total net revenues in 2020, which was up 93.1% on a constant currency basis over 2019**.

(Emphasis added).

105.   In the IPO Registration Statement, Coupang also represented that it provides its customers with personalized product promotions and recommendations, stating in part:

> **We have developed technology that enables us** to increase our operating efficiency through enhanced product merchandising and supply chain management, and **to provide our customers with personalized product promotions and recommendations**.

(Emphasis added).

106.   The IPO Registration Statement continued to explain the ease of its search technology, stating in part:

> **Our search technology produces a simplified experience** that overcomes the lack of standardization and duplicate listings by leveraging our product knowledge graph to show more unique products in search results**, helping customers find, compare, and make purchasing decisions easily**.
>
> * * *
>
> The foundation of our search and recommendations is a product knowledge graph that organizes by product, not by seller, which enhances the customer experience. **Search and recommendation results** are aided by deep learning, data analytics, and image recognition among other inputs to **produce greater relevance and personalization. As a result, we believe**

> **customers can identify what they want and the best value for that product easier through our tools than those on competitive services** that require customers to sort through multiple sellers to compare offers for a given product.

(Emphasis added).

107. In the IPO Registration Statement, Coupang also represented that it helps third-party merchants to improve and grow their business, stating in part:

> [W]e focus on innovations around our end-to-end integrated network of technology and infrastructure, new offerings, and effective merchant solutions. **These investments help** us deliver superior selection, convenience, and low prices to customers while helping **merchants to improve and grow their businesses**.

(Emphasis added).

108. Similarly, Coupang stated that its matching technology helps third-party merchants enhance demand generation and compete holistically, stating in part:

> **We offer merchants of all sizes effective solutions to improve their customer experience and enhance demand generation. Our customer-to-product matching technology** ingests millions of new merchant listings daily into our product knowledge graph, and, leveraging machine learning, **provides personalized product exposure to customers based on relevance and predicted customer experience**. **This technology helps merchants compete holistically on overall customer experience**.
>
> \* \* \*
>
> **Our matching technology** ingests millions of new merchant listings daily into a product knowledge graph, and, leveraging machine learning, **provides product exposure to customers based on relevance and predicted customer experience**, among other variables. **This helps high-quality merchants compete holistically on overall customer experience**. **This results in** lowering barriers to entry for merchants, and **improving experience for customers**, which encourages repeat purchasing that **generates higher sales for merchants**.

(Emphasis added).

109. The IPO Registration Statement also informed investors that Coupang uses a

system that rewards merchants for providing competitive prices, stating in part:

> Our strategy is to provide the lowest prices available in the Korean market across a wide and diverse assortment of items. **We achieve this through** our diversified procurement strategy, which involves scaled procurement from local and international suppliers, direct sourcing from manufacturers, and **our creation of a system that rewards merchants for providing competitive prices**.

(Emphasis added).

110.    In the IPO Registration Statement, Coupang also stated "**we have policies and procedures to protect both merchants and customers on our marketplace**." (Emphasis added).

111.    In the IPO Registration Statement, Coupang also represented that its positive company culture, focusing on its customer centricity, stating in part:

> Since 2013, we have invested billions of dollars to build our owned-inventory selection, proprietary technology, and the largest B2C logistics footprint as compared to other product e-commerce players in Korea. . . . **Those investments have been guided by our operating principles of putting customers at the center of everything we do . . . . In our view, our culture of customer centricity is our most important asset, and it drives us to relentlessly pursue operational excellence and innovation.**
>
> * * *
>
> We are committed to delivering a "wow" experience to all of our customers every day. **This commitment drives every aspect of our operations** and pushes us to redefine the standards of e-commerce.

(Emphasis added).

***March 11, 2021 Bloomberg Markets Interview***

112.    On March 11, 2021, Defendant Kim appeared for an interview on *Bloomberg Markets* in connection with its IPO. The host noted that "you've had had several deaths among

delivery and logistics employees who are allegedly overworked, overnight working," and asked

"how does the company answer to this issue?" Defendant Kim responded as follows:

> You know it's heartbreaking, it's a tragedy whenever there's a passing of
> one of our family members, but here's the important context: we have
> hundreds of thousands of people who work in our operation and the
> fulfillment and delivery, and we've had one work-related death in the past
> year. But one is too many, and we have to continue to do better. **We are
> actually leading the industry on this front . . . . .**

(Emphasis added).

113.    Later during the same interview, the host asked, "I wonder after reports of more

than one—several—deaths of your employees what can you do to improve the situation?" In

response, Defendant Kim stated:

> As I mentioned, we have to continue to change and make the standards better.
> **We are raising the bar** and will continue to invest. **We have invested hundreds
> of millions of dollars in automation that makes the deliveries not only a
> better experience for our customers but the work easier for our employees
> and we are, we will continue, to create good jobs, the best working condition
> jobs in the country.**

(Emphasis added).

***The S-8 Registration Statement***

114.    On March 18, 2021, Coupang filed the S-8 Registration Statement. The S-8

Registration Statement expressly incorporated the IPO Registration Statement and the Prospectus,

as well as "[a]ll documents filed by [Coupang] pursuant to Sections 13(a), 13(c), 14 and 15(d) of

the Exchange Act on or after the date of this Registration Statement and prior to the filing of a

post-effective amendment to this Registration Statement that indicates that all securities offered

have been sold or that deregisters all securities then remaining unsold."

115.    However, soon after market open on March 24, 2021, news broke that a Coupang

employee in his early 40s died his second day on the job earlier that day next to his company-

issued car in Incheon, South Korea. As the *Korea Herald* commented in a report the next morning,

"[t]he courier's death immediately triggered speculation that he may have become the latest delivery worker to die from apparent overwork." After the close of trading on March 24, 2021, media sources published an official statement from Coupang revealing that the deceased courier was allowed to begin delivering packages even though he displayed "heart-related abnormalities" during his initial medical examination. On this news, Coupang's stock dropped from $46.00 on March 23, 2021, to close at $43.70 on March 25, 2021, representing a decline of 5%.

*April 3, 2021 Newsroom Statement*

116.     On or around April 3, 2021, Coupang posted on its official website the following statements concerning its employee relations:

> **Coupang pays great attention to the health and welfare of all employees,** and has a great responsibility to protect the safety and health of its employees. **Coupang will continue to lead the courier logistics industry by prioritizing the health and safety of its employees**. **Coupang will continue to make efforts to create a better working environment by considering the health and safety of workers as the company's core value and first management principle**.

(Emphasis added).

117.     On April 4, 2021, the owner of a small business appeared on MBC's investigative program "Straight" and revealed how Coupang was using the trade material that he spent time and money to create to advertise and secure sales for other merchants in its Item Market. On this news, Coupang stock declined from $47.31 to close at $45.94 on April 5, 2021, or 2.0%

118.     After market close on May 3, 2021, a number of civic groups announced that they reported Coupang to the KFTC for requiring small business owners to hand over their protected trade materials in its Seller Terms and Conditions. On this news, Coupang's stock declined from $42.06 to close at $41.49 on May 4, 2021, representing a drop of 1.3%.

*May 4, 2021 Newsroom Statement*

119.     On or around May 4, 2021, Coupang posted a statement to its online newsroom,

declaring that the Item Winner system allowed sellers to "fairly" compete with one another:

> **Coupang's Item Winner (one product, one page system) is an improved service** that allows consumers to make purchasing decisions based on consumer experience, unlike existing open markets that focus on advertising cost competition**. . . . Through this, sellers can compete fairly without the burden of advertising costs**, and customers can easily find the best products.

(Emphasis added).

120.    In that same release, Coupang also stated: "Many sellers have continued to grow sales by entering the item market where they **can compete fairly without advertising costs.**" (Emphasis added).

121.    Further, Coupang also declared that its marketplace did not violate certain laws, stating as a matter of fact:

> **Item Market Sales Terms and Conditions do not violate the Fair Trade Act and Copyright Act**. . . . The representative image of the product refers to the image of the product itself, which is not subject to copyright by the seller. Coupang clearly guides sellers to upload only product images when registering images, and the detail page screens that sellers individually upload are not shared with other sellers. **Therefore, the claim that Coupang infringes on the copyrights of sellers' images is not true at all**.

(Emphasis added).

122.    On May 10, 2021, PSPD issued a release refuting various points made by Coupang about its Sellers Terms and Conditions, including, in particular, that photographs created for advertising purposes can be protected by law under South Korea's Copyright Act, contrary to Coupang's assertions. On this news, Coupang's stock dropped from $38.93 to close at $37.07 on May 10, 2021, representing a decline of 4.8%.

### *May 12, 2021 Quarterly Earnings Call*

123.    On May 12, 2021, Coupang hosted an earnings call with investors and analysts to discuss the Company's Q1 2021 results (the "Q1 2021 Earnings Call"). During this call,

Defendant Kim stated: "[T]he most important competitive advantage that Coupang has is really our orientation. We've made—we've always worked backwards from the customer."

124.    During the same earnings call, Defendant Anand stated as follows in response to a question about the "mix" of owned inventory, or 1P, versus third-party, or 3P, sales:

> [O]n your second question of 1P versus 3P mix change, we continue to see strong growth in both 1P and 3P and there is no material change and mix at this time. So, we are focused on both the services and continue to drive initiatives in each of them. **However, over time, we would become agnostic between our owned inventory and third-party selection**.

(Emphasis added).

### *First Quarter 2021 Form 10-Q*

125.    On May 13, 2021, Coupang filed with the SEC a quarterly report on Form 10-Q for the period ended March 31, 2021 (the "1Q 2021 Form 10-Q"), which incorporated the S-8 Registration Statement by reference. Appended as exhibits to the 1Q 2021 Form 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Kim and Anand attested to the accuracy of the financial statements contained therein, the disclosure of any material changes to the Company's internal controls, and the disclosure of any fraud committed by the Company, its officers, or its directors. The 1Q 2021 Form 10-Q stated: **"We have policies and procedures to protect both merchants and customers on our marketplace**." (Emphasis added).

126.    Beginning on June 22, 2021, and continuing for several days thereafter, news reports revealed that Coupang was facing a growing consumer boycott, with users deleting their Coupang accounts and encouraging others to do so, in response to details about the fire safety failings at the Deokpyeong Facility. The boycott reached its peak on June 25, 2021. On this news, Coupang stock declined $2.62, or 6.55%, from the close of trading on June 22, 2021, to the close

of trading on June 25, 2021. According to Bloomberg, after the close of trading on June 22, 2021, option contracts rose to three times the 20-day average. By June 24, 2021, options trading surged to fifteen times the 20-day average, with puts being the most active contract.

*July 2, 2021 Press Release*

127.    On or around June 14 and July 2, 2021, Coupang posted on its official website the following statements concerning its relationships with merchants and suppliers:

> **Coupang is focusing its efforts on expanding online sales channels and supporting sales of small and medium-sized businesses in the region**. Coupang will continue to support small and medium-sized businesses in order to revitalize local coexistence and the stagnant local economy.

(Emphasis added).

128.    On July 4, 2021, news broke that the KFTC was investigating Coupang for manipulating its search algorithm to favor its PB products. On this news, Coupang's stock price dropped $0.51 per share, or 1.3%, to close at $39.95 per share on July 6, 2021, the next trading day.

129.    On July 14, 2021, Deutsche Bank downgraded Coupang from "buy" to "hold." Among other things, Deutsche Bank pointed out that "Coupang is being probed over allegations it manipulated search algorithms to prioritize its own products over those of suppliers."

*August 11, 2021 Quarterly Earnings Call*

130.    On August 11, 2021, Coupang hosted an earnings call with investors and analysts to discuss the Company's results for the quarter ended June 30, 2021. During this call, Defendant Kim stated the following:

> We exist to deliver new moments of WOW for customers. **Everything we do at Coupang revolves around wowing our customers.** Our confidence that we'll continue to make investments, to keep chasing the demand, **to make sure that our customer experience is not compromised, that we protect long-term customer trust.** Because -- and we'll continue to do that

aggressively, because we know that our investments will pay off over time.
(Emphasis added).

131.    On that same call, Defendant Kim also stated that "**Our investments** that continuously strengthen the virtuous cycle across our business **are driving significant growth for merchants and vendors.**" (Emphasis added).

132.    Meanwhile, the damage caused to the Company by the June 2021 fire at the Deokpyeong Facility was still being revealed. In its second quarter 2021 earnings release, published after the market closed on August 11, 2021, Coupang reported a $518.6 million loss for the quarter, which it attributed primarily to almost $300 million in inventory and equipment losses due to the fire at the Deokpyeong Facility in June 2021. On this news, Coupang's stock price dropped $3.07 per share, or 8.3%, to close at $34.13 per share on August 12, 2021.

133.    Securities analysts specifically attributed the loss to the fire at the Deokpyeong Facility. For example, Deutsche Bank Research reported on August 12, 2021, that the "296m of the drop was due to its warehouse fire, which impacted inventory and fixed assets." Samsung Securities also noted that Coupang's "operated losses widened y-y [year-over-year] due to a one-off cost (related to a logistics center fire in June)."

### *Second Quarter 2021 Form 10-Q*

134.    On August 16, 2021, Coupang filed with the SEC a quarterly report on Form 10-Q for the period ended June 30, 2021 (the "2Q 2021 Form 10-Q") which incorporated the S-8 Registration Statement by reference. Appended as exhibits to the 2Q 2021 Form 10-Q were substantially the same SOX certifications as referenced in ¶125, signed by Defendants Kim and Anand. The 2Q 2021 Form 10-Q stated: **"We have policies and procedures to protect both merchants and customers on our marketplace."** (Emphasis added).

135.    After the close of the market on August 18, 2021, the KFTC announced that it

fined Coupang nearly $3 million and issued it a corrective order for forcing hundreds of its suppliers to raise the price of products at competing businesses or purchase products and services from Coupang against their will to make up for margin losses caused by Coupang's price match system. On this news, Coupang stock dropped $1.24 per share, or 2.0%, to close at $31.73 per share on August 19, 2021.

***August 19, 2021 Newsroom Statement***

136.    On or around August 19, 2021, Coupang posted on its official website the following statements concerning the KFTC sanctions:

> I will tell you about the FTC sanctions. The essence of this case is that large conglomerate manufacturers discriminated against supply prices in order to check new distribution channels such as Coupang. In fact, LG Household & Health Care, the No. 1 household goods company in Korea, has used its exclusive supplier position to supply major products to Coupang for a long time at prices higher than those of other distributors. . . . Coupang has attempted to innovate so that consumers can purchase products faster and cheaper in the distribution market, which has been dominated by chaebols and conglomerates. **At the same time, we have continued to innovate distribution by lowering entry barriers to SMEs [small and medium-sized businesses] and pursuing shared growth**.

 (Emphasis added).

137.    Before the market opened on September 10, 2021, a KFTC representative announced that it had received numerous complaints that Coupang manipulated its search algorithm to improperly prioritize its own products over those of third-party sellers. On this news, Coupang stock dropped $0.27 per share, or 0.9%, to close at $29.98 per share on September 10, 2021.

***September 16, 2021 Press Release***

138.    On or around September 16, 2021, Coupang posted on its official website the following statements concerning its relationships with merchants and suppliers:

**The "Item Market," which allows fair competition without the burden of advertising costs, was also cited as a reason for being friendly to small business owners.** In order to solve the unfair sales structure centered on advertising cost competition, **Coupang is operating an "Item Market" system that comprehensively evaluates price, delivery, and customer response so that products that consumers will prefer the most are exposed first**.

(Emphasis added).

***November 12, 2021 Quarterly Earnings Call***

139.    On the morning of November 12, 2021, Coupang hosted an earnings call to discuss the Company's results for the quarter ended September 30, 2021. During this call, Defendant Kim stated:

> Our strategy to build compounding customer loyalty and long-term shareholder value is reflected in our core operating tenants . . . . One, **we exist to deliver new moments of WOW for customers and create a world where they asked, "How did we ever live without Coupang?"** . . . Three, **we . . . employ technology, process innovation, and economies of scale to create an amazing customer experience and drive operating leverage and significant cash flows over time**.

(Emphasis added).

140.    During the same earnings call, Defendant Anand stated:

> We were less aggressive on customer acquisition this quarter to **improve the experience for existing customers**. **Prioritizing what's best for customers** drives loyalty and engagement and we believe that is the best long-term approach.

(Emphasis added).

141.    During the same earnings call, Defendant Kim disclosed that higher costs were attributable to "inefficiency" and hiring troubles caused by the June 2021 fire at the Deokpyeong Facility. On this news, Coupang's stock price dropped $2.61 per share, or 8.9 percent, to close at

$26.58 per share on November 12, 2021. Analysts covering Coupang took note of this in their corresponding reports. For example, UBS noted that the supply shortage during the quarter was due to the "loss of one of [Coupang's] largest fulfilment centre to a fire in June." Similarly, BofA Global research advised that Coupang's supply issues were "exacerbated by the loss of one of largest fulfillment centers to a fire in June."

### Third Quarter 2021 Form 10-Q

142.    On November 12, 2021, Coupang filed with the SEC a quarterly report on Form 10-Q for the period ended September 30, 2021 (the "3Q 2021 Form 10-Q"). Appended as exhibits to the 3Q 2021 Form 10-Q were substantially the same SOX certifications as referenced in ¶125, signed by Defendants Kim and Anand. The 3Q 2021 Form 10-Q stated: **"We have policies and procedures to protect both merchants and customers on our marketplace."** (Emphasis added).

### February 27, 2022 Newsroom Statement

143.    On or around February 27, 2022, Coupang posted another statement to its online newsroom concerning its product reviews, which provided:

> **Coupang's product reviews are operated in a fair and transparent manner, and when an employee writes a review, it is clearly stated.** When partners, including CPLB, launch new products in Coupang, Coupang employees and members are given the opportunity to try the products first, and **reviews are provided to help customers shop**.

(Emphasis added).

### The 2021 Form 10-K

144.    On March 3, 2022, Coupang filed with the SEC its annual report on Form 10-K for the year ended December 31, 2021 (the "2021 Form 10-K"). Appended as exhibits to the 2021 Form 10-K were substantially the same SOX certifications as referenced in ¶125, signed by

Defendants Kim and Anand.

145.    The 2021 Form 10-K discussed the Company's commitment to improving customer experience, stating in part:

> **We also continue to** refine our business intelligence systems to **provide more personalized search results and recommendations to help existing customers find and buy more of what they need on Coupang**.
>
> \*\*\*
>
> We are committed to delivering a "wow" experience to all of our customers every day. **This commitment drives every aspect of our operations** and pushes us to redefine the standards of e-commerce.

(Emphasis added).

146.    With respect to Coupang's merchants, the 2021 10-K stated in part:

> **We offer merchants of all sizes effective solutions to improve their customer experience and enhance demand generation. Our customer-to-product matching technology** ingests millions of new merchant listings daily into our product knowledge graph, and, leveraging machine learning, **provides personalized product exposure to customers based on relevance and predicted customer experience**. **This technology helps merchants compete holistically on overall customer experience**.

(Emphasis added).

147.    Regarding both customers and merchants, the 2021 10-K represented: **"We have policies and procedures to protect both merchants and customers on our marketplace."** (Emphasis added).

148.    On March 6, 2022, the KFTC announced that it issued a corrective order to Coupang for failing to maintain written dispute resolution policies accessible to customers on its platform in violation of South Korea's Electronic Commerce Act.

149.    On this news, Coupang's stock declined $1.38, or 6.5%, to close at $19.72 at the close of trading on March 7, 2022.

150.    On March 9, 2022, UBS published a note in which it observed that "Coupang shares have fallen 58% since its IPO in March 2021." Among other things, it attributed that drop to "regulatory risks" arising from "online platform regulations."

151.    After market close on March 14, 2022, PSPD announced that it reported Coupang to the KFTC for manipulating product reviews for its PB products to ensure they receive more exposure in its search results and published findings supporting its claim. On this news, Coupang's stock declined $0.67 to close at $15.45 on March 15, 2022, representing a decline of 4.1%.

152.    The statements in paragraphs ¶¶94-114, 116, 119-121, 123-125, 127, 130, 131, 134, 136, 138-140, 142-147 above were materially false and/or misleading and failed to disclose that: (1) the labor conditions for its frontline workers continued to be unsafe; (2) Coupang maintained large fulfillment centers that failed to follow basic fire safety measures; (3) Coupang used its position of power to coerce hundreds of suppliers to raise the price of their goods on competing sites or to purchase advertising from Coupang against their will to protect Coupang's profit margins on those goods when they eroded or were lost; (4) Coupang misappropriated protected trade content from its merchants to maximize the commissions it earned on third-party sales; (5) Coupang manipulated its search algorithm, favoring high-margin PB products to the detriment of suppliers and merchants with similar products; and (6) Coupang failed to reveal to merchants and customers they were under investigation by the KFTC since before its IPO. As a result, the Company's statements were materially misleading and/or lacked a reasonable basis.

## DAMAGES TO COUPANG

153.    The Individual Defendants' misconduct has directly and proximately caused Coupang to lose and expend many millions of dollars.

154.    These expenditures include, without limitation, the costs and fees associated with the Securities Class Action filed against Coupang, its CEO, and its CFO, any internal investigations conducted by the Company, and amounts paid to outside lawyers, accountants, investigators, or other consultants in connection thereto.

155.    These expenditures also include, without limitation, unjust compensation, benefits, and other payments paid to the Individual Defendants who were breaching their fiduciary duties.

156.    The Individual Defendants' misconduct has directly and proximately caused Coupang to suffer a loss of reputation and goodwill. A "liar's discount" will affect the Company's stock moving forward due to the Company's and the Individual Defendants' misrepresentations and the Individual Defendants' breaches of fiduciary duties.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

157.    Plaintiff brings this action derivatively for the benefit of Coupang to remedy injuries suffered as a result of the Individual Defendants' breaches of their fiduciary duties as directors and/or officers of Coupang, violations of the Exchange Act, unjust enrichment, as well as for contribution and indemnification under Sections 10(b) and 21D of the Exchange Act and 11(f) of the Securities Act.

158.    Coupang is named solely as a nominal party in this action. This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

159.    Plaintiff is, and has been at all relevant times, a shareholder of Coupang. Plaintiff will adequately and fairly represent the interests of Coupang in enforcing and prosecuting its rights, and, to that end, has retained competent counsel, experienced in derivative litigation, to enforce and prosecute this action.

160.    Plaintiff incorporates by reference and realleges each and every allegation stated

above as if fully set forth herein.

161.    A pre-suit demand on the Board of Coupang is excused as futile. At the time this suit was filed, the Board was comprised of seven members: Defendants Kim, Mehta, Sun, and Warsh (the "Director Defendants") and non-parties Jason Child, Pedro Franceschi, and Ambereen Toubassy. Plaintiff needs to allege demand futility as to four of seven Director Defendants.

162.    Demand is excused as to all of the Director Defendants because each of them faces a substantial likelihood of liability due to the scheme in which they knowingly or recklessly participated to make and/or cause the Company to make false and misleading statements and omissions of material facts. Their participation in this scheme renders them unable to impartially investigate the charges and decide whether to pursue this action against themselves.

163.    The Director Defendants knowingly or recklessly participated in this scheme in violation of their fiduciary duties. The fraudulent scheme was intended to make the Company appear more profitable and attractive to investors. In further breach of their fiduciary duties, the Director Defendants caused the Company to fail to maintain internal controls. As a result of this conduct, Director Defendants breached their fiduciary duties, face a substantial likelihood of liability, are not disinterested, and demand upon them is excused as futile.

164.    Demand is futile on Defendant Kim for the following, additional reasons. Defendant Kim is the Company's CEO and the Chairman of the Board. As the Company admits, he is a non-independent director. The Company provides Defendant Kim with his principal occupation. He receives substantial compensation as an officer and as a director of Coupang. As the Company's highest officer, Defendant Kim was ultimately responsible for all of the false and misleading statements and omissions that were made by or on behalf of the Company during the Relevant Period. Defendant Kim personally made false and misleading statements on earnings

conference calls, signed the Registration Statements, and signed other public statements such as the 2021 Form 10-K, which also contained false and misleading statements. Defendant Kim also beneficially held approximately 76% of the voting power over Coupang following the IPO due to his ownership of Class B common stock and thus had control over Coupang. As the Company's CEO and as Chairman, he conducted little oversight of the scheme to cause the Company to make false and misleading statements and consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme. In addition, Defendant Kim is a defendant in the Securities Class Action. Therefore, Defendant Kim breached his fiduciary duties, faces a substantial likelihood of liability, is neither independent nor disinterested, and demand upon him is futile and, thus, excused.

165. Demand is futile on Defendant Mehta for the following, additional reasons. Defendant Mehta signed the Registration Statements and the 2021 Form 10-K, which contained false and misleading statements. As a trusted Company director, he conducted little oversight of the scheme to cause the Company to make false and misleading statements and consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme. Defendant Mehta was compensated by his role as a director of Coupang. Defendant Mehta is a defendant in the Securities Class Action. Therefore, Defendant Mehta breached his fiduciary duties, faces a substantial likelihood of liability, is neither independent nor disinterested, and demand upon him is futile and, thus, excused.

166. Demand is futile on Defendant Sun for the following, additional reasons. Defendant Sun signed the Registration Statements and the 2021 Form 10-K, which contained false and misleading statements. As a trusted Company director, he conducted little oversight of the scheme to cause the Company to make false and misleading statements and consciously

disregarded his duties to monitor internal controls over reporting and engagement in the scheme. Defendant Sun was compensated by his role as a director of Coupang. Further, Defendant Sun has served as a member of the Audit Committee at all relevant times. The Company's Audit Committee Charter charges its members with oversight of the effectiveness of the Company's internal controls, the integrity of its financial statements, and its compliance with laws and regulations. As a member of the Audit Committee, Defendant Sun failed to adequately exercise his oversight functions as required by the Audit Committee Charter, failed to ensure the integrity of the Company's internal controls, and allowed materially misleading financial statements to be disseminated in the Company's SEC filings and other public disclosures.  Defendant Sun is a defendant in the Securities Class Action Therefore, Defendant Sun breached his fiduciary duties, faces a substantial likelihood of liability, is neither independent nor disinterested, and demand upon him is futile and, thus, excused.

167.    Demand is futile on Defendant Warsh for the following, additional reasons. Defendant Warsh signed the Registration Statements and the 2021 Form 10-K, which contained false and misleading statements. As a trusted Company director, he conducted little oversight of the scheme to cause the Company to make false and misleading statements and consciously disregarded his duties to monitor internal controls over reporting and engagement in the scheme. Defendant Warsh was compensated by his role as a director of Coupang. Therefore, Defendant Warsh breached his fiduciary duties, faces a substantial likelihood of liability, is neither independent nor disinterested, and demand upon him is futile and, thus, excused.

168.    Demand is futile on the Board for the following, additional reasons.

169.    Defendant Anand and Defendant Parker are employed by Coupang. As such, the Director Defendants cannot impartially consider a demand into Anand's and Parker's misconduct

due to their influence over the Board as high-level officers at Coupang responsible in the Company's daily operations.

170.     Coupang has been exposed to significant losses due to the wrongdoing complained of herein. Still, the Director Defendants have not filed any lawsuits against the Individual Defendants, including themselves, or any others who were responsible for this wrongdoing, making no attempt to recover for Coupang any part of the damages it has suffered due to this wrongdoing. Therefore, any demand now upon the Director Defendants would be futile.

171.     The Individual Defendants' actions were not the product of legitimate business judgment as they were based on bad faith and intentional, reckless, or disloyal misconduct. Thus, none of the Director Defendants can claim exculpation from their violations of duty. As all of the Director Defendants face a substantial likelihood of liability, they are self-interested in the transactions challenged herein are incapable of independently and disinterestedly considering whether to pursue this action on behalf of the Company. Therefore, demand is further excused as futile.

172.     For the foregoing reasons, all of the Director Defendants, and if not all of them then at least four, cannot consider a demand with disinterestedness and independence. Therefore, a demand upon the Board is excused as futile.

### <u>FIRST CLAIM</u>
**Against Individual Defendants for Violations of 10(b) of the Exchange Act, 15 U.S.C.  §  78(j), and Rule 10b-5, 17 C.F.R. § 240.10b-5**

173.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

174.     The Individual Defendants violated Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

175.     The Individual Defendants, individually and in concert, directly or indirectly, disseminated or approved the materially untrue and misleading statements specified above, which they knew or should have known were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

176.     The Individual Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they: (i) employed devices, schemes, and artifices to defraud; (ii) made false statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (iii) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and others similarly situated.

177.     The Individual Defendant acted with scienter because they: (i) knew that the public documents and statements issued or disseminated in the name of Coupang were materially untrue or misleading; (ii) knew that such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violation of the securities laws.

178.     The Individual Defendants, by virtue of their receipt of information reflecting the true facts of Coupang, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning Coupang, participated in the fraudulent scheme alleged herein.

179.     As a result of the foregoing, the market price of the Coupang's common stock was

artificially inflated during the Relevant Period. In ignorance of the falsity of the statements, the Company's stockholders relied on the statements described above and/or the integrity of the market price of the Company's common stock in purchasing Coupang's common stock at prices that were artificially inflated as a result of these false and misleading statements and were damaged thereby.

## SECOND CLAIM
### Against the Individual Defendants for Breach of Fiduciary Duties

180.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

181.    Each Individual Defendant owed to Coupang the duty to exercise candor, good faith, and loyalty in the management and administration of the Company's business and affairs.

182.    Each of the Individual Defendants breached their fiduciary duties of candor, good faith, loyalty, reasonable inquiry, oversight, and supervision.

183.    The Individual Defendants' conduct was due to their intentional or reckless breach of the fiduciary duties they owed to Coupang. The Individual Defendants intentionally or recklessly breached or disregarded their fiduciary duties to protect the rights and interests of Coupang.

184.    In breach of their fiduciary duties owed to Coupang, the Individual Defendants willfully or recklessly made and/or caused the Company to make false and misleading statements and omissions of material fact that failed to disclose, inter alia, that (1) the labor conditions for its frontline workers continued to be unsafe; (2) Coupang maintained large fulfillment centers that failed to follow basic fire safety measures; (3) Coupang used its position of power to coerce hundreds of suppliers to raise the price of their goods on competing sites or to purchase advertising from Coupang against their will to protect Coupang's profit margins on those goods

when they eroded or were lost; (4) Coupang misappropriated protected trade content from its merchants to maximize the commissions it earned on third-party sales; (5) Coupang manipulated its search algorithm, favoring high-margin private brand products to the detriment of suppliers and merchants with similar products; and (6) Coupang failed to reveal to merchants and customers they were under investigation by the KFTC since before its IPO. As a result, Coupang's public statements were materially false and misleading at all relevant times.

185.    The Individual Defendants failed to correct and/or caused the Company to fail to correct the false and misleading statements and omissions of material fact, rendering them personally liable to the Company for breaching their fiduciary duties.

186.    The Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly engage in the fraudulent schemes set forth herein and to fail to maintain internal controls. The Individual Defendants had actual knowledge that the Company was engaging in the fraudulent schemes set forth herein, and that internal controls were not adequately maintained, or acted with reckless disregard for the truth, in that they caused the Company to improperly engage in the fraudulent schemes and to fail to maintain adequate internal controls, even though such facts were available to them. Such improper conduct was committed knowingly or recklessly and for the purpose and effect of artificially inflating the price of Coupang's securities.

187.    These actions were not a good-faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

188.    As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations, Coupang has sustained significant damages. As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

189.    Plaintiff on behalf of Coupang has no adequate remedy at law.

## THIRD CLAIM

### Against the Individual Defendants for Unjust Enrichment

190.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

191.    By their wrongful acts, violations of law, and false and misleading statements and omissions of material fact that they made, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, Coupang.

192.    The Individual Defendants either benefitted financially from the improper conduct, or received profits, bonuses, stock options, or similar compensation from Coupang that was tied to the performance or artificially inflated valuation of Coupang, or received compensation that was unjust in light of the Individual Defendants' bad faith conduct.

193.    Plaintiff, as a shareholder and a representative of Coupang, seeks restitution from the Individual Defendants and seeks an order from this Court disgorging all profits, including from insider transactions, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by the Individual Defendants due to their wrongful conduct and breach of their fiduciary and contractual duties.

194.    Plaintiff on behalf of Coupang has no adequate remedy at law.

## FOURTH CLAIM

### Defendants Kim and Anand for Contribution and Indemnification
### Under Sections 10(b) and 21D of the Exchange Act

195.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

196.    Coupang, Defendant Kim, and Defendant Anand are named as defendants in the

Securities Class Action, which asserts claims for violations of Sections 10(b) and 20(a) of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder. If and when the Company is found liable in the Securities Class Action for these violations, the Company's liability will be in whole or in part due to Defendants Kim's and Anand's willful and/or reckless violations of their obligations as officers and/or a director of Coupang.

197.    Defendants Kim and Anand, because of their positions of control and authority as CEO and CFO of Coupang, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Coupang, including the wrongful acts complained of herein and in the Securities Class Action.

198.    Therefore, Defendants Kim and Anand are liable under 15 U.S.C. § 78j(b), which creates a private right of action for contribution, and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f), which governs the application of a private right of action for contribution arising out of violations of the Exchange Act.

199.    Thus, Coupang is entitled to receive all appropriate contribution or indemnification from Defendants Kim and Anand.

### FIFTH CLAIM

**Against the Individual Defendants for Contribution and Indemnification
Under Section 11(f) of the Securities Act**

200.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as fully set forth herein.

201.    As a result of the conduct and events alleged above, the Company is a defendant in the Securities Class Actions brought on behalf of Coupang shareholders, in which it is a joint tortfeasor in claims brought under Section 11 of the Securities Act.

202.    Federal law provides Coupang with a cause of action against other alleged joint

tortfeasors under Section 11(f) of the Securities Act.

203.     The plaintiffs in the Securities Class Actions allege that the Registration Statement contained untrue statements of material facts or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing proper preparation.

204.     Coupang is the registrant for the IPO. The Individual Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

205.     As issuer of the shares, Coupang is strictly liable to the class action plaintiff and the class for the misstatements and omissions alleged in the Securities Class Action.

206.     The plaintiff in the Securities Class Action alleges that none of the defendants named therein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

207.     The Individual Defendants, because of their positions of control and authority as officers and directors of Coupang, were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of Coupang, including the wrongful acts complained of herein and in the Securities Class Action.

208.     Accordingly, the Individual Defendants are liable under Section 11(f) of the Securities Act, 15 U.S.C. § 77k(f)(1), which creates a private right of action for contribution.

209.     As such, Coupang is entitled to receive all appropriate contribution or indemnification from the Individual Defendants.

## SIXTH CLAIM
## Derivative Claim Against Defendants Kim, Anand, and Parker for Gross Mismanagement

210.    Plaintiff incorporates by reference and re-alleges each and every allegation set forth above, as though fully set forth herein.

211.    By their actions alleged herein, Defendants Kim, Anand, and Parker either directly or through aiding and abetting, abandoned and abdicated their responsibilities and fiduciary duties with regard to prudently managing the assets and business of Coupang in a manner consistent with the operations of publicly-held corporation.

212.    As a direct and proximate result of Defendants Kim's, Anand's, and Parker's gross mismanagement and breaches of duty alleged herein, Coupang has sustained and will continue to sustain significant financial and reputational damage.

213.    As a result of the misconduct and breaches of duty alleged herein, Defendants are liable to the Company.

214.    Plaintiff, on  behalf of Coupang, has no adequate remedy at law.

## PRAYER FOR RELIEF

FOR THESE REASONS, Plaintiff demands judgment in the Company's favor against all Individual Defendants as follows:

(a)    Declaring that Plaintiff may maintain this action on behalf of Coupang, and that Plaintiff is an adequate representative of the Company;

(b)    Declaring that the Individual Defendants have breached and/or aided and abetted the breach of their fiduciary duties to Coupang;

(c)    Determining and awarding to Coupang the damages sustained by it because of the violations set forth above from each of the Individual Defendants, jointly and severally, together with prejudgment and post-judgment interest thereon;

(d)      Directing Coupang and the Individual Defendants to take all necessary actions to reform and improve Coupang's corporate governance and internal procedures to comply with applicable laws and to protect Coupang and its shareholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for shareholder vote the following resolutions for amendments to the Company's Bylaws or Certificate of Incorporation and the following actions as may be necessary to ensure proper corporate governance policies:

> 1.      a proposal to strengthen the Board's supervision of operations and develop and implement procedures for greater shareholder input into the policies and guidelines of the board;

> 2.      a provision to permit the shareholders of Coupang to nominate at least four candidates for election to the Board;

> 3.      a proposal to ensure the establishment of effective oversight of compliance with applicable laws, rules, and regulations;

(e)      Awarding Coupang restitution from Individual Defendants, and each of them;

(f)      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees, costs, and expenses; and

(g)      Granting such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: August 16, 2023                    **THE ROSEN LAW FIRM, P.A.**

                                          */s/ Laurence M. Rosen*
                                          Laurence M. Rosen
                                          Phillip Kim
                                          275 Madison Avenue, 40th Floor
                                          New York, NY 10016
                                          Telephone: (212) 686-1060
                                          Facsimile: (212) 202-3827
                                          Email: pkim@rosenlegal.com

                                          *Counsel for Plaintiff*

## VERIFICATION

I, Kia Tang am a plaintiff in the within action. I have reviewed the allegations made in this Shareholder Derivative Complaint, know the contents thereof, and authorize its filing. To those allegations of which I have personal knowledge, I believe those allegations to be true. As to those allegations of which I do not have personal knowledge, I rely upon my counsel and their investigation and believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct. Executed this __ day of ___8/11/2023___, 2023.

DocuSigned by:

*Kia tang*

09745D900114404...

Kia Tang